David Atkinson is here for Richardson, H. Sanders Carter, Jr. is here for Liberty Life, and Mr. Atkinson, are you ready to proceed with your argument? Yes, I am, Your Honor. Thank you. Good morning, and may it please the Court, this is David Atkinson, and I'm counsel for the appellant, Stuart Richardson. Your Honors, the question in this appeal is very straightforward. Is the sale of an asset considered income from employment? Because the answer to that question is no. The district court's opinion should be reversed. Let me begin by talking about the Financial Advisor Succession Agreement, because that's the agreement that Mr. Richardson executed that's at issue. During a lengthy and successful career as a financial advisor, Mr. Richardson built and developed a large client base. While his clients may have been customers of his former employer, Wells Fargo, they were Mr. Richardson's clients. To the extent that these customers generated income for Wells Fargo, that income resulted from the relationships that Mr. Richardson had formed with his clients over many years. In this business, these client relationships are referred to as a book of business, somebody's book. In that book of business, Your Honors, those client relationships, that book has a value. Recognizing the value of those relationships, Wells Fargo established a program that allowed a retiring financial advisor, such as Mr. Richardson, to, in effect, sell his or her book of business to another financial advisor. This was the Financial Advisor Succession Program. Under this program, the financial advisor was compensated for the value of those client relationships. That is exactly what happened here. After he became disabled and was forced to stop working, Mr. Richardson agreed to sell his book of business to another financial advisor. As with any other sale of any other asset, they negotiated a price. Under their agreement, Mr. Richardson was to receive periodic payments over five years. This is Judge Wilson. He didn't get a lump sum. He's getting payments. Are they on a monthly basis? They are on a monthly basis, Your Honor. That's correct. Would these payments have taken place in the absence of his employment relationship with Wells Fargo? Well, I think in a larger sense, Your Honor, that if Mr. Richardson had not been a Wells Fargo employee and had not worked as a financial advisor, he wouldn't have client relationships. Aren't the payments recorded on a W-2 form reflecting that it's employment compensation from Wells Fargo? The payments are recorded on a W-2 form, and the district court seemed to assign a great deal of weight to that. But a W-2 form is issued for wages, tips, or other compensation. The kind of payment that Mr. Richardson received was other compensation. This was not salary. It was not compensation for work performed. These were not retirement benefits, and they were not severance. This is compensation for what Mr. Richardson sold under the financial advisor succession agreement, the value of his client relationships, something that was personal to Mr. Richardson and that he had developed with his clients over many years. Do the pay stubs characterize these succession payments as earnings? They do not, Your Honor. They're just recorded on a W-2 form, and you have a check. Okay. They're actually very silent on this point, and that's yet another reason why we think the district court, Your Honor, applied perhaps too much weight to the fact that Mr. Richardson received a W-2. Now, Your Honor, what we're talking about here, Your Honors, is the plan definition of other income earnings, and you'll recall from our briefs that Mr. Richardson went through quite a lengthy process to try to get a straight answer out of Liberty Life as to why it had cut his benefits by 68%. The plan defines other income earnings as the amount that Mr. Richardson earns or receives from any form of employment, including severance, or any amount that he receives from any formal or informal sick leave or salary continuation plan. Counsel, this is Judge Corrigan. If you look at the income, I guess as they say now, 30,000 feet, isn't this designed to say that this is a disability payment that's being made, and if the person can achieve income through other forms from employment, that that would be set off against it? And as Judge Wilson said, the payments are as a result of his employment with Wells Fargo. Obviously, there's a debate about what exactly you call it, but why isn't this just a simple situation where disability payments are set off by amounts that the employer is paying this individual? Your Honor, there's no question that disability payments can be offset by other payments that the disabled person, in this case Mr. Richardson, receives. But, for example, if Mr. Richardson sold his house or some other asset, that wouldn't offset his disability payments. Now, Your Honor asked, and I'm glad you brought this up, whether or not the payments came from Wells Fargo. It's true that the check says Wells Fargo. It's issued by Wells Fargo. But the financial advisor's succession agreement says that the payments are actually based on the receipts by the receiving financial advisor. In other words, while the receiving financial advisor does not write Mr. Richardson a check every month, in a very real sense, the payments come from him. That's what the agreement says. But doesn't it eventually, and you'll correct me, I'm sure, because you know this way better than I do, but eventually there are situations in which Wells Fargo will be responsible for making payments. That is, if the receiving advisor kind of poops out and then the successor poops out, eventually there is a requirement that Wells Fargo actually make some reduced amount of these payments under the agreement. Is that right? There is a situation where payments can continue, but at all times the payments are contingent on the business remaining with the company. Because that's where the value is, is that these client relationships stay with Wells Fargo. So I wouldn't characterize this as a payment from Wells Fargo. If for some reason these clients were to leave, then Mr. Richardson would not be paid anymore. Now, one thing that the... This is Judge Wilson again, and Wells Fargo says in its brief, or Liberty Life says in its brief, that Wells Fargo makes the payments in accordance with Internal Revenue Code section 49A. Isn't that an employment tax provision? And so therefore we should construe these succession payments as other income earnings if the payments are made in accordance with 409A of the Internal Revenue Code by... Well, Your Honor, the financial advisor succession agreement does require compliance with section 409A, and that applies to non-qualified deferred compensation points. None of the materials related to the financial advisor succession plan or the agreement indicates that it is a deferred compensation plan. In fact, if you look at the financial advisor succession agreement, it addresses Wells Fargo's many deferred compensation plans in a separate section and states that awards under those plans are not governed by his terms. If you look also at the brochure for the financial advisor succession plan, it specifically instructs retiring financial advisors, and I'm going to quote, to refer to the specific deferred compensation plans for information about deferred compensation. So this is something else. This is something else. There's a case that we cited on page 22 of our initial brief out of the Southern District of New York. It talks about the issue of whether an agreement was an employee pension benefit plan under ERISA, and in that particular case, the agreement stated that the parties intended that the agreement would comply with section 409A of the Internal Revenue Code, and despite this language, the court determined, and we would submit it correctly, that the agreement did not result in a deferral of income. It noted that the agreement did not provide for payment of work performed or deferred tax treatment of any compensation. So just because there's a reference to or compliance with section 409A in the plan, it doesn't transfer an agreement into an arrangement for payment for work performed or deferred tax treatment of any compensation. We can discuss this further without getting into any more detail on page 22 and beyond in our initial brief, but, Your Honor, I would submit that the reference to 409A, while the district court did seem to give it quite a bit of weight, is not enough to change what we have here into payment based on employment. Counsel, this is Judge Corrigan again. You claim in your brief that, because the district judge actually resolved this case at the first step of the analysis under ERISA, right? And you say that the test at that level, in this case, would be whether there are two reasonable competing interpretations of this agreement and how it should be handled. So can you just briefly say what your reasonable interpretation is that would call into question the district judge's decision? Absolutely, Your Honor. Our interpretation, and I may be a bit simplistic, but the issue is really quite simple. It's whether or not a payment like this is the sale of an asset or something related to employment. And as I said earlier, in the larger sense, it's related to employment because these client relationships were developed over the years of the employment. But that would be true of any asset that somebody might sell. And I do want to, in the moment I have left, be very clear about this. The district court, I think, misconstrued Mr. Richardson's argument regarding ambiguity. Mr. Richardson does not contend the plan is ambiguous. The definition would only be ambiguous if Liberty Life's interpretation was reasonable. And Liberty Life's interpretation is not reasonable. But if it is, and Your Honor hit the nail on the head a moment ago with your question, then we have a situation where the policy language is capable of being interpreted two ways. And under well-subtle precedent, the policy is ambiguous and the court should adopt the interpretation offered by Mr. Richardson. The record here simply does not support the district court's conclusion that the payments received by Mr. Richardson for the sale of his book of business were earnings from any form of employment. The agreement itself disclaims the creation of an employment contract, prohibits even the appearance of an employer-employee relationship. So if both interpretations are reasonable, then Liberty Life's interpretation cannot be de novo correct. And for that reason, the district court erred when it resolved the case at this stage. All right. Thank you, Mr. Atkinson. And we'll hear from Mr. Carter on behalf of Liberty Life. Thank you, Your Honor. This is Sanders Carter representing Liberty Life. Let me respond initially to a question by the court, and that is how the payments to Mr. Richardson were characterized by Liberty Life on the pay stubs. They are, in fact, described as earnings, specifically profit formula earnings. That notation appears on each of the pay stubs that's in the record. A couple of preliminary points. Liberty has never questioned that Mr. Richardson is totally disabled, has paid monthly benefits to him from the outset, and continues to pay benefits. So the question is not one of disability, but whether the reduction in the amount of his monthly benefit was correctly applied under the other income earnings provision of the policy. Mr. Richardson's argument, as articulated this morning, has been consistent from the beginning. The argument was first made before the decision to reduce his benefits was even made by Liberty. And that argument was and is now whether the money that Mr. Richardson receives from Wells Fargo is other income earnings or whether it represents a payment that he received for the sale of a tangible asset that he sold to another financial advisor, what he refers to as his book of benefits. Counsel, this is such a bargain. There is language in the succession agreement which disclaims that it's an employment agreement. And I know you'll give me the precise language. And so why isn't it a reasonable interpretation of the agreement to interpret the agreement exactly as it says it is? Because the question is whether the income received from Wells Fargo, Mr. Richardson, is other income earnings as defined in the policy. The policy defines that as the amount of earnings the covered person earns or receives from any form of employment, including severance. Now, this is not severance pay, but the inclusion of severance in this definition of other income earnings illustrates that a current or active employment relationship is not required for this offset provision to apply. Now, the argument that is being made by Mr. Richardson, I think... I guess, sir, what I was referring to is the agreement says it does not create a contract of employment but serves only as a synopsis of the compensation arrangement regarding the program. So if it doesn't create a contract of employment, why is it... why does it come within the other income earnings proviso that speaks of employment? Well, I would say it is because Mr. Richardson's eligibility to receive this money was based on his employment relationship with Wells Fargo. The relationship does not have to continue in order for him to be compensated under this agreement, but his ability to participate in the agreement and the amount of income that he received on a monthly basis were both determined by his long-term employment relationship with Wells Fargo. This was an agreement under which he was encouraged to retire. He was financially compensated to retire, and Wells Fargo's interest in this agreement... Wells Fargo was a party to the agreement. Wells Fargo's interest was to retain the clients for which Mr. Richardson provided service by transitioning those clients, not selling a business, but transitioning those clients who were clients of Wells Fargo to another financial advisor who would provide services after Mr. Richardson's retirement. This is Judge Wilson. Counsel, if the language of the succession agreement explicitly disclaims the creation of an employment relationship, why shouldn't we say that this term, other income earnings, is ambiguous, and therefore the language has to be interpreted in his favor? If we're arguing over whether or not it's a mere compensation agreement or the payments are otherwise. Well, the financial advisor succession agreement is a separate contract, and its purpose is to maintain the client relationship that Wells Fargo has with customers that were served by Mr. Richardson. The specific policy language that we're concerned with in this case is this, that other income earnings is the amount of earnings that the covered person, Mr. Richardson, earns or receives from any form of employment, including severance. If an active employment relationship were required, the words including severance would be meaningless, and we can't assume that some revision of the policy has no meaning. Well, this is Judge Wilson again. If the agreement ensures that he will continue to receive payments even if his former accounts are not profitable, doesn't that suggest that the payments come from the evaluation of the account? It does come from the evaluation of the account. This is Judge Corrigan again. Can I ask you about the procedural posture of the case? The district judge resolved this case at the first step, which means that he found that the administrator, Liberty, was de novo correct. As you know from the precedents, it's very often the case that you just skip right to the second and third steps and not try to resolve the case on that first basis. But if you do have a potential ambiguity, then the district judge is not given the benefit, nor is the administrator given the benefit of the arbitrary and capricious standard and so forth. You're actually just looking at whether it's right or it's wrong. And I guess I'm just wondering if there is something to talk about, that is the fact that the agreement disclaims that it's a contract of employment, doesn't that create an ambiguity that would at least require the court to go to the next steps in the process? I would say it does not because that position assumes, requires an ongoing or present active employment relationship, which is not contemplated in the policy. Now, I'm certainly aware, as the court has suggested, that courts in arresting cases do often skip over the first step in the Williams analysis and proceed to the question of whether the decision was arbitrary and capricious, whether it was supported by evidence in the record, whether there was a reasonable basis for the decision. The district court did not do that in this case, but determined that he agreed with the decision and therefore ended the analysis at the first step of the Williams decision. The argument that has been made by Mr. Richardson from the outset is that he sold his book of business, that it was a tangible asset that he was free to sell like a used car, but clearly that is not the case. He had the right to transfer it with Wells Fargo's consent and participation to another financial advisor. So the argument that has been made from the outset, in fact was being made before the decision to reduce his benefits had even been made, was that he was simply selling an item of tangible personal property. That continues to be the argument. Now, with the additional question of whether the court should have decided the case at the first step of the Williams analysis, and Mr. Richardson's argument on that point, which takes up the bulk of his reply brief, is that there were violations of the Arithaka Claims Regulations and that those violations were significant enough that they prevented him from understanding why his benefits had been reduced and prevented him from making an effective appeal. A review of the record shows that that argument is not supported. There is an ongoing record of dialogue between Mr. Atkinson, who is a very experienced Aritha litigator, and Liberty, starting even before this decision had been made, and that the issues were thoroughly discussed and presented by Mr. Atkinson. Now, that's not to say that there were not missteps along the way. It is not to say that the claim handling was perfect. It was not. The person who was corresponding with Mr. Atkinson was identified as a claims technician. That person initially characterized the income received by Mr. Richardson as retirement income, retirement benefits. That was incorrect. That was later corrected. But it did not prevent Mr. Richardson from making his argument or presenting any evidence he chose to. The claims person at one point said that the decision to reduce benefits was not an adverse claim decision. That was wrong. It is. That also was corrected. And the complete claim file and copy of the policy was provided to Mr. Richardson well before he made his appeal. The argument that this was the sale of an asset has not changed. Nothing done or not done by Liberty interfered with the making of that argument. Liberty did not accept it. The district court did not accept it. And significantly, Mr. Richardson to this day has not said what additional evidence he would have prevented from presenting to Liberty. He simply says, initially he said the policy is not ambiguous. Now he says it is susceptible of two different meanings. And his interpretation should be accepted. But the bottom line from start to finish has been the argument that Mr. Richardson sold a tangible asset to someone else, that the funds he received in return for that sale were not characterized as other income earnings under the policy. So that brings us to the question of whether procedural deficiencies should affect the outcome of the case. And the case law in this circuit I think is clear on that. The most recent case of which I'm aware, cited in our brief, is O.D. v. Jones-Lange-Lassell Medical in which the court repeated what has been said before, that notice of an adverse decision need only substantially comply with the ERISA notice requirements. And that a lover does substantially comply if taken as a whole it supplies the plaintiff with a statement of reasons that under the circumstances permitted a sufficiently clear understanding of the claims administrator's position to permit effective review. In this case, I would say there can be no real dispute that that requirement was satisfied. Thank you. Thank you, Your Honor. Thank you, Mr. Carter. We'll hear again from Mr. Atkinson. Thank you. Was that Mr. Carter who just completed his argument? Yes, sir. Okay. Mr. Atkinson? Thank you, Your Honor. Okay. Your Honors, there's been this discussion about whether client relationships, a book of business, can be a tangible asset. And I think the argument we heard a moment ago that we're treating it as if it was something that could be sold just like a used car or a house, to use my analogy. And the answer is, absolutely. You absolutely can sell client relationships as an asset. I'd invite the court to think about what happens. Sometimes you hear about small-town or maybe big-town doctors or dentists or lawyers who are in a sole practice, and they retire. And when they retire, they sell their practice to a younger professional. And when they do that, they receive some kind of value for what they're selling, payment for that. And I'm sure that would include the furniture and the equipment or whatever is in the office. But it also includes something else. It includes those client relationships and those patient relationships that the professional built up over many years. And those relationships have value. Wells Fargo knew that when it established the Financial Advisor Succession Program. And that's what Mr. Richardson sold, his book of business. Now, the dictionary definition of tangible is something that is capable of being appraised at an actual or approximate value. And if we look at the process here, when he negotiated the terms of this sale and called it a transfer, but it was ultimately a sale, that's what they did. They appraised the value of his client relationships, of his book, and then they assigned a price to it. They put a value on it. In fact, that price was actually renegotiated. It's in the record where it was changed after the initial agreement was signed. So this was negotiated just like any sale. These are not payments for work performed, not payments for an employer-employee relationship, not payments from having a paying job. The only source of the payments is the succession agreement. And this was just stated by Counsel for Liberty Life. That is a separate contract, a separate contract that was negotiated. So I would urge the court to look beyond what the paychecks say. Now, I do want to just for a moment. This is Judge Corrigan. Can I ask you, let's say that this decision is reversed. Let's say the district judge makes the same ruling under the succeeding steps. And it seems to me that you're, and then you'd be under an arbitrary and capricious standard. It seems to me that your main argument against that would be these procedural irregularities. But under the decision of the court in OD, which was referenced by your opponent, is there going to be support in the 11th Circuit precedent for finding a decision to be arbitrary and capricious solely on the basis of these alleged procedural irregularities? Your Honor, I'd suggest that because of the procedural irregularities, the decision will not be reviewed in the succeeding steps under the arbitrary and capricious standard, that those don't apply. And we have briefed this in our briefs, and I won't go through it unless the court would really like me to take up that time. But what we would suggest is if you look at the record, you see that Mr. Richardson, you know, I appreciate the comment that I'm skilled, but Mr. Richardson had no meaningful opportunity to present his case to Wells Fargo. He had no meaningful opportunity to explain any of this. And we had a situation where what Wells Fargo did was it adopted a post hoc rationale after the case was in litigation as to the reasons for its decision. And the district court based this decision almost entirely on the arguments that Liberty Life developed during this litigation, not during the process. Now, there's precedent in this court, I'll acknowledge, that a post hoc reasoning can be considered. But the courts have said that while a district court can consider self-serving post hoc explanations, they should not be given much weight. So we would suggest that when you look at the remaining steps of the Williams analysis, and really you're getting to the last two to make a decision here, that Mr. Richardson is absolutely entitled to win, and that the decision made by Liberty Life should be reversed once we get there. So that's our argument. Just like the small town dentist, just like the small town doctor, whatever, Mr. Richardson sold something to the receiving financial advisor, Mr. Fitzgerald. He was compensated for that. And the policy doesn't have any language saying that his benefits can be offset by those payments. If Liberty's argument is correct, and we would submit it's not, but even if it's reasonable and correct, then we have the situation where two interpretations of policy language were advanced. And in that situation, the district court commits error when it adopts the reasoning advanced by the insurance company. So we'd ask the court to reverse the district court. We think the court could actually go on and consider the remaining steps. I thought about that a little bit, and I'm not really sure what's next. But if the court doesn't feel the record is sufficiently developed, it would have to be remanded. Thank you, your honors. All right, thank you, Mr. Carter and Mr. Atkinson, and we'll take the matter under advisement. And that completes our docket for this morning, and the court is adjourned.